### UNITED HYDRO–CARBONS CO. v. TEXAS PACIFIC COAL & OIL CO.

#### No. 9176.

Circuit Court of Appeals, Fifth Circuit.

May 3, 1940.

Wm. E. Allen, of Fort Worth, Tex., and Jno. W. Turner, of Eastland, Tex., for appellant.

Wm. K. Hall, of Houston, Tex., and Charles L. Black, of Austin, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, hereafter referred to as plaintiff, brought this suit at law to recover damages of $1,322,000, for breach of contract. The record is voluminous, occupying 990 pages of the printed transcript, but the material issues may be somewhat briefly stated.

Appellee, hereafter referred to as defendant, has mineral leases covering some 4,400 acres of land in the Ranger Field in Texas. Plaintiff is the owner of a patented process for extracting gasoline from natural gas. On May 7, 1926, plaintiff and defendant negotiated a contract by which defendant agreed to sell to plaintiff all the casing head gas produced from its various leases, plaintiff agreeing to pay royalties of approximately 50% of the gross value of the gasoline produced. Twenty-two leases were set out in an exhibit as a part of the contract. After it was drawn up but before it was signed the contract was amended by a letter, dated May 13, 1926, to Samuel Butler, president of plaintiff. Among other things, the letter provided that the contract should not become binding upon plaintiff or its assigns unless and until, in addition to the leases enumerated in the contract defendant should deliver its casing head gas produced on its Markham, Tidal and Golson leases. At the time the contract in suit was executed defendant had a contract with Chestnut & Smith Corporation for the conversion of its casing head gas into gasoline, for which it was to receive royalties of about 33⅓ per cent. This contract was dated January 1, 1922, and contained this provision: "This contract shall be binding on the parties hereto for a period of five (5) years from the date hereof, it being further agreed and understood that, if at the expiration of five (5) years, selling and marketing conditions have not changed, and all other things being equal, there will be an extension of this contract for an additional term of five (5) years."

The contract in suit provided that plaintiff should begin taking gas April 1, 1927, or perhaps sooner, on defendant giving notice, was to run for a primary term of five years but was terminable at the end of the primary period by defendant, if it elected to build its own conversion plant. On July 16, 1926, defendant notified plaintiff that it refused to carry out the contract. This suit was brought on May 12, 1930, nearly four years after the breach. Defendant pleaded: that the contract with plaintiff was entered into purely as the result of mutual mistake in that it was considered by both parties the Chestnut & Smith contract was not renewable; that it never became effective as casing head gas from the Markham, Tidal and Golson leases had never been delivered; that plaintiff had made no demand for delivery of casing head gas and had abandoned the contract. On motion of defendant the case was transferred to the equity docket to allow consideration of the equitable defenses. By replication plaintiff joined issue on these defenses and pleaded estoppel. Exceptions set up in the answer were passed upon by the court and a master was appointed to take the evidence and report his findings of facts and conclusions of law. Voluminous evidence, much of which was in conflict, was taken by the master and his report was filed on November 6, 1936.

Exceptions to the report of the master were overruled by the court and a decree was entered, awarding plaintiff judgment for $15,000, which had been tendered, and assessing all costs against defendant. There are eighteen assignments of error but, as the whole case is before us, it is unnecessary to discuss them in detail.

The principal contentions of plaintiff are that it is immaterial whether Chestnut & Smith Corporation had the right to renew its contract as it was not in fact extended but a new contract was made; and that neither the pleadings nor evidence support the master's findings that the contract in suit was abandoned.

The master's report is lengthy and comprehensively reviews the evidence in detail. Resolving the conflict in the evidence, he found that the Chestnut & Smith contract had been frequently discussed and thoroughly considered by the parties during the negotiations preceding the making of the contract in suit; that they mutually reached the erroneous conclusion that conditions had so changed that Chestnut & Smith could not enforce its renewal. The master concluded that there was mutual mistake of fact in making the contract in suit, but for which neither party would have entered into it, and that defendant was not estopped to urge the equitable defenses.

Passing without decision the defense of mutual mistake it is clear that plaintiff abandoned its contract on the promise of defendant to reimburse it for expenses theretofore incurred. The long delay in bringing this suit tends to strengthen that conclusion. It is unnecessary to discuss other findings and conclusions of the master. The award of $15,000 to plaintiff does equity between the parties.

The record presents no reversible error. The judgment appealed from is affirmed.